IN RE APPLICATION OF WAHIDY.

[Cite as *In re Application of Wahidy*, 142 Ohio St.3d 464, 2015-Ohio-1829.]

(No. 2014–1531—Submitted January 14, 2015—Decided May 19, 2015.)

---

**Per Curiam.**

{¶ 1} Sammy Hickmat Wahidy of Toledo, Ohio, has applied to register as a candidate for admission to the practice of law in Ohio. Wahidy was born in Ramle, Israel. He came to the United States in 1988. He graduated from the University of Toledo with a Bachelor of Science degree in biology and public health in 1995. He obtained a bachelor's degree in law in Israel in 2009 and later obtained an L.L.M. from Michigan State University College of Law.

{¶ 2} A seven-member panel of the Toledo Bar Association Bar Admissions Committee interviewed Wahidy in October 2013. The panel issued a provisional

report recommending that his application to register as a candidate not be approved as to his character, fitness, and moral qualifications to practice law based on his failure to provide complete and accurate information regarding his past on his application and his neglect of his financial obligations.

{¶ 3} Wahidy appealed the admissions committee's recommendation that his application be disapproved, pursuant to Gov.Bar R. I(12). A panel of the Board of Commissioners on Character and Fitness conducted a hearing and issued a report making findings of fact and recommending that Wahidy's pending application be denied, but that he be permitted to reapply to take the July 2018 or a later bar exam. The board adopted the panel's report in its entirety.

{¶ 4} We adopt the board's findings of fact and recommendation that Wahidy's pending application be disapproved, but based on his failure to provide complete and accurate information about a number of significant items on his registration application, his conflicting explanations for his omissions, and his false statements throughout the admissions process, we conclude that he should not be permitted to reapply to register as a candidate for admission to the Ohio bar.

### Wahidy's Lack of Candor

{¶ 5} During the investigation into Wahidy's character and fitness to practice law, the bar-admissions committee discovered that he had failed to disclose a number of significant facts regarding his past that he was required to disclose on his registration application, including his 1995 divorce, a foreclosure action, the insolvency of his failed business, a personal-injury action, charges of aggravated menacing and criminal damaging, and multiple jobs he had held. At the panel hearing, Wahidy admitted that he had signed his registration application and certified that his answers were complete and true, even though he knew they were not.

{¶ 6} Wahidy offered explanations for these omissions to the bar-admissions committee and to the panel, but the board found that his accounts were inconsistent and that he lacked credibility. For example, when asked why he did not disclose his divorce in response to the question, "Have you ever been named a party to any civil or administrative action or legal proceeding? NOTE: Family Law matters * * * should be included here," Wahidy said that he did not know that a divorce was a civil proceeding. He explained that he and his former wife had agreed to end their marriage by dissolution. But the domestic-relations-court docket reflects that the case was a divorce, that the first two attempts to serve Wahidy's spouse by certified mail failed but a third attempt was successful, and that the divorce was granted two months later.

{¶ 7} Wahidy and his second wife purchased a home in Toledo in 2002. They financed most of the $93,000 purchase price with a loan secured by a mortgage.

Thereafter, Wahidy formed a limited-liability company to start a dollar store and borrowed $12,000, secured by a second mortgage, to fund the venture. Although the business failed and closed, Wahidy answered "No" to the question, "Has [your] business or enterprise ever been insolvent or filed for protection from its creditors." And at the hearing, Wahidy testified that he still owed approximately $13,500 on the loan secured by the second mortgage and had not made any payments for some time.

{¶ 8} Wahidy testified that before he and his family returned to Israel in 2005, he sent the keys to his home to the mortgage company because foreclosure was imminent. He claimed that he did not reveal the foreclosure on his registration application because he had not been part of the process. The docket in the foreclosure action, however, reflects that he was served with the complaint and filed an answer pro se.

{¶ 9} Although Wahidy disclosed a civil case that was filed against him for a broken windshield, he did not disclose in the application that the underlying incident also involved a physical confrontation with the owner of the car that resulted in criminal charges being filed against him. When asked about the incident during his interview and at the hearing, he gave different descriptions of the incident. At the admissions-committee interview, he said that he had slapped another man with an open hand. At the panel hearing, however, Wahidy testified that he had had words with the man and had broken the man's windshield, but he denied that any physical altercation had occurred. And in the general amendment form that he submitted to the National Conference of Bar Examiners ("NCBE"), Wahidy reported that the related civil action was a result of a "fist fight." Wahidy testified that he had used that term because the other man had pushed him, but he emphasized that he had never laid a hand on the other man, though he later stated, "he pushed me and I pushed back." As a result of this incident, Wahidy was charged with aggravated menacing and criminal damaging. And when he failed to appear in the criminal matter, a bench warrant was issued for his arrest. He testified that he avoided the warrant until he could raise enough money to hire an attorney, and then he turned himself in. The criminal charges were ultimately dismissed, and Wahidy reported that the civil matter was resolved in mediation.

{¶ 10} Wahidy offered varying explanations with regard to his unreported employment. He claimed that he had forgotten about the jobs or that he had thought that they were not significant enough to report. He also claimed that he chose not to report a job with his brother's security firm in Israel because he knew that the NCBE request for verification would languish on his brother's desk.

{¶ 11} In addition to the number of items that Wahidy failed to disclose on his registration application, the board expressed some concern that Wahidy had not taken adequate steps to address his debt. It noted that when Wahidy returned to Israel in 2005, he left significant debt behind—including student loans, two mortgages, and other miscellaneous debts—and he told the admissions committee that he had left the United States with no intention of returning. At the panel hearing, however, Wahidy claimed that he had always intended to return to the United States after he completed law school. He reported to the NCBE that when he arrived in Israel in 2005, he did not have a job, but spent most of his time fixing up a house that he had purchased. He later changed his story to claim that the house belonged to his father, who had agreed to let him live there with his family if he fixed up the house.

{¶ 12} Wahidy testified that he was living paycheck to paycheck when he returned to the United States, which prevented him from taking steps to address his debt. At the time of the panel hearing in May 2014, however, he reported that he was making a monthly minimum payment of $35 on a student-loan debt of approximately $33,000. He had obtained a job as a car salesman in mid–2013 and had already earned approximately $33,000 in the first four and a half months of 2014, compared to the $24,000 that he had earned in all of 2013. Wahidy testified that he was working to negotiate settlements on many of his debts and would have them paid off soon, but he had very little documentation to support his claim, and he admitted that he had no money set aside to make the payments.

## Disposition

{¶ 13} An applicant to the Ohio bar must prove by clear and convincing evidence that he or she "possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(11)(D)(1). The applicant's record must justify "the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them." Gov.Bar R. I(11)(D)(3). "A record manifesting a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for disapproval of the applicant." Id.

{¶ 14} The board did not believe that any of the issues it identified would prevent Wahidy from being approved to take the bar exam if they were considered in isolation. But when combined, Wahidy's numerous omissions and false statements on his application and during his admissions interview and hearing raised serious concerns about his character and fitness to practice law. The board believed that he changed his story after reading the admissions committee's report, and it noted that at least one of the panel members felt he had no credibility.

{¶ 15} The board was not persuaded by Wahidy's claims that he had difficulty with the language or interpretation of the questions on the registration application. It noted that if he did not understand that he was a party to a civil action when he retained an attorney and filed for divorce or when he filed a pro se answer in his foreclosure action, his fitness to practice law was in doubt. But if he did understand the questions and chose to respond the way he did, he "is deceitful and without the credibility required of an attorney."

{¶ 16} Based on these findings and the paramount importance of honesty and integrity in the legal profession, the board found that Wahidy had failed to carry his burden of proving that he currently possesses the requisite character, fitness, and moral qualifications for admission to the bar. Therefore, the board recommends that his current application be disapproved but that he be permitted to apply to take the July 2018 bar examination.

{¶ 17} Because we find that Wahidy failed to provide complete and accurate information about numerous issues in his past on his registration application and failed to testify candidly about his reasons for doing so, we agree that he has failed to prove that he currently possesses the requisite character, fitness, and moral qualifications for admission to the practice of law in Ohio. *See* Gov.Bar R. I(11)(D)(3)(g) (requiring an assessment of an applicant's character, fitness, and moral qualifications to include consideration of the applicant's failure to provide complete and accurate information concerning the applicant's past) and (h) (requiring the consideration of the applicant's false statements, including omissions). Accordingly, we adopt the board's recommendation to disapprove Wahidy's pending registration application. Based on Wahidy's complete lack of candor throughout the admissions process, however, we order that Wahidy be forever precluded from reapplying for the privilege of practicing law in this state.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LANZINGER, KENNEDY, and O'NEILL, JJ., concur.

O'DONNELL and FRENCH, JJ., dissent and would disapprove the applicant's current application but permit the applicant to apply for the July 2018 bar examination.

---

Law Office of Philip A. King, L.L.C., and Philip A. King, for applicant.

Marshall & Melhorn, L.L.C., and Alan Boyd Dills, for Toledo Bar Association.